[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the CT Page 10892 facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Teresa Azevedo, and the defendant, were married in Danbury, Connecticut, on March 2, 1985. The plaintiff has resided continuously in the State of Connecticut for at least one year immediately prior to the date of the complaint, and immediately prior to the date that the decree is entered. The marriage between the parties has broken down irretrievably, without any reasonable prospects of reconciliation. There are no minor children issue of the marriage, and no minor children have been born to the plaintiff wife since the date of marriage of the parties, and neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that the defendant is primarily at fault for the breakdown of the marriage.
The plaintiff was born in Portugal on February 28, 1947. She came to the United States on April 5, 1977. She became a naturalized American citizen in 1979. She holds a United States passport and a Portuguese passport. She renewed her Portuguese passport in 1993. She has a high school education and has taken at least one course at a technical school. She also has some computer course education and has gone to college to teach. She is not certified to teach in Connecticut. She suffers from a thyroid problem as well as migraines. She spends approximately $60 to $70 monthly for medication for her thyroid problem.
The plaintiff is not seeking COBRA benefits under the defendant's Kimberly Clark health insurance.
In 1977, the plaintiff went to work at Aldridge Precision as an assembler earning $2.77 hourly. She then worked for less than one year at Davidson earning in excess of $3 an hour. She then returned to work at Aldridge. She was then out of work for almost one year until January of 1980. She then went to work for Amphenol. She remained there until June of 1988. She left in order to earn more money. If she had remained there for an additional fourteen months, she would be vested in its pension plan. After Amphenol, she went to work for a doctor, commencing June 17, 1988, as a secretary/assistant. She also was working cleaning houses and cleaning rooms at a local motel. She also earned approximately $900 in 1981 and 1982 selling crystal over an approximate six to seven month period of time. She terminated CT Page 10893 her employment with the doctor in April of 1997 as a result of her hours being decreased. She has also worked as a certified nursing assistant earning $9.40 hourly. On May 28, 1997, she was employed by Norco working forty hours weekly in the assembly of helicopter parts. She was initially on a three month probationary period that ended July 14, 1997. Her hourly rate following her probationary period will be $11.50. She also has health insurance effective August 1, 1997. In 1989, she started to teach two nights weekly for two hours per night at a high school earning $18 hourly. She continued doing that for approximately four years, while also working for the doctor and also cleaning one to two houses weekly. It would take her approximately two years to obtain her bachelor's degree in order to be certified to teach in Connecticut. The plaintiff is not certified to teach in the State of Connecticut.
The plaintiff has taught in the Danbury area at a Portuguese school commencing 1982. She quit that job in December of 1982 and then returned to that employment in 1995 working two days a week, two hours each day at $14 hourly for a total of $56 per week. The school is an alternative school in the Portuguese language and also teaches Portuguese culture. Defendant's Exhibit 4 is a letter dated April, 1996. It has an incorrect date on it. The correct date should be 1982 to 1983 not 1982 to 1994. Its purpose is to show that the plaintiff taught here at the Portuguese school. A similar document is given to all the teachers at that school. She last worked at the Portuguese school in May of 1997. She worked the full school year from September of 1996 to May of 1997. She also worked the school year from September, 1995 to May of 1996.
The parties are in dispute as to whether the plaintiff is entitled to receive a pension from the government of Portugal when she retires. There is no credible evidence that the plaintiff has any vested interest in any pension from the government of Portugal or what the amount of those pension benefits would be. The court is therefore not considering the defendant's claim that the plaintiff has such a pension. For the purposes of financial orders hereinafter entered, the court is including the plaintiff's income at the Portuguese school.
When the parties married, the plaintiff had approximately $5,000. In addition, she was being paid $10,000 alimony at the rate of $1200 annually. CT Page 10894
The plaintiff is employed as a lead person at Norco. Her gross weekly income is $495.25. Her net weekly income is $371.25. She also has income from her part-time cleaning work of a gross weekly of $62.50 and a net weekly of $54 for a combined total net weekly income of $425.25.
The parties have a joint savings account at Union Savings Bank with a balance of approximately $6200. The plaintiff also has a checking account at Union Savings Bank with a balance of approximately $1000, and a checking account at the Village Bank with a balance of approximately $800.
The plaintiff owns a 1990 Suzuki with a value of $2000 and no loan balance. She has miscellaneous assets of jewelry, collectibles and antiques with a value of $500. She has a liability to Patricia Thomas of $2500, and attorney's fees liability of $5179. Patricia Thomas is the girlfriend of the plaintiff's adult son. The plaintiff borrowed money from her to live on.
The parties own a family home jointly located at 10 Briarwood Drive, Danbury, Connecticut. They are in dispute as to its fair market value. The court finds that the fair market value is $120,000, that it has a first mortgage with a balance of $119,908.96 and an equity $91.04.
The family home was purchased June 1, 1988 for $154,000. The parties put approximately $20,000 down, and financed the balance through a $134,000 first mortgage.
The Danbury Hospital at one time had a lien on the family home in the amount of $829.36. That lien has since been discharged. The debt was incurred by the defendant.
The parties are in dispute as to whether the defendant caused damage to certain items of furniture in the family home. From the evidence presented, the court finds that he did not cause any such damage.
The defendant was born on March 13, 1951.
The defendant has been a naturalized United States citizen since 1976. He has graduated high school and has some college courses at Western Connecticut State University. CT Page 10895
The defendant is presently employed by Kimberly Clark Corporation as a fork-lift operator. His gross weekly pay is $996.11. His net weekly pay is $680.42.
The defendant was employed by Amphenol from 1977 to 1987. He has two pension plans that he has vested in: one is with Amphenol; the second is with Kimberly Clark. The normal retirement age for the defendant's pension plan with Amphenol is sixty-five on March 13, 2016. His full pension benefits at age sixty-five will be $186.88 per month. He may apply for retirement benefits as early as age fifty-five, and his benefits would then be actuarially reduced. Under the Kimberly Clark pension plan he will receive, at age sixty-five, monthly benefits of $192.83. If he elects to receive his pension benefit on April 1, 2006, he will receive $126.14 a month. He left Amphenol as a result of a general layoff. He did not elect a survivorship benefit. The plaintiff signed the waiver regarding a survivorship benefit. Allied Signal used to own Amphenol.
The defendant has $380 at the Kimberly Clark Credit Union. He has a 1990 Dodge Caravan with a value of $4800 and no loan balance, and a 1976 Fiat with a value of $100 and a loan balance of $100.
The defendant has a life insurance policy with Metropolitan Life on his life in the face amount of $10,000 and a cash surrender value of $4260. He has a second life insurance policy through New York Life in the face amount of $25,000 and a cash surrender value of $6985. Both life insurance policies were acquired in 1973. The monthly cost for the New York Life policy is $42.33. The monthly cost for the Metropolitan policy is $15.60. He must maintain the life insurance shown on his financial affidavit until his minor child turns eighteen on March 19, 1998.
He has a liability for attorney's fees for $2579.40.
He also has a liability to VISA/Master Card with a balance of $4868; ATT Universal Card with a balance of $2541; Amphenol Credit Union with a balance of $1100; Jean Roberts with a balance of $1624; Foley Belsaw with a balance of $153; and Dice, Maloney Lenz with a balance of $3200 that was incurred as a result of the defendant seeking to modify his outstanding support order from a prior marriage. CT Page 10896
In the calendar year 1996, the plaintiff had gross income from Kimberly Clark of $60,735.95 which amounts to $1168 gross weekly. For the week ending July 6, 1997, his year-to-date income was $30,366.72 which is an average gross weekly income of $1084. His financial affidavit shows his gross weekly income to be $995. For the purposes of financial orders hereinafter entered, the court is using $1084 less deductions as his average gross weekly income.
The defendant is under an order to pay $95 weekly support for a minor child from a prior marriage. That obligation terminates in March of 1998. He has weekly expenses for medical and dental of $15, part of which is as a result of the court order regarding providing medical and dental for that minor child.
The defendant was previously ordered to pay alimony to the plaintiff as a result of a pendente lite order. That order was modified by this court on July 17, 1997, reducing alimony from $200 per week to $100 per week retroactive to May 9, 1997. The pendente lite alimony arrearage is $3600 as of September 17, 1997.
The parties are in dispute regarding various items of personal property. Schedule A, attached to the plaintiff's claims for relief, is a list of items that the plaintiff seeks to have returned to her. The defendant has in his possession one of the two window fans in question, as well as the breakfast trays, beach tent, TV antenna and electric engraver. He does not know where the remaining items are.
This court has considered the provisions of § 46b-82
regarding the issue of alimony and has considered the provisions of § 46b-81 (c) regarding the issue of property and has considered the provision of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
ORDERS
 A. BY WAY OF DISSOLUTION
The marriage between the parties is dissolved, and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
CT Page 10897
1. No alimony is awarded in favor of either party.
2. The alimony arrearage of $3600 as of September 17, 1997, is ordered to be paid at the rate of $200 per month, commencing December 1, 1997, and on the first day of each month thereafter. The arrearage is to include interest at the rate of 10 percent per annum. Payments are first to be applied to interest and then applied to principal. The alimony pendente lite order remains in effect until the date this decision is filed. The arrearage is not merged into the judgment and survives the judgment as is any additional arrearage that may have accumulated from September 17, 1997 to the date this decision is filed.
C. BY WAY OF PROPERTY ORDERS
1. The defendant is ordered to quitclaim to the plaintiff all of his right, title and interest in the family home located at 10 Briarwood Drive, Danbury, Connecticut. The plaintiff is to pay the first mortgage and hold the defendant harmless therefrom. The delivery of the deed is to take place on December 1, 1997 at the office of counsel for the plaintiff.
2. The joint Union Savings Account in the approximate amount of $6200 is awarded solely to the plaintiff. The Union Savings checking account, as well as the Village checking account shown on the plaintiff's financial affidavit are both awarded to the plaintiff. The Kimberly Clark account shown on the defendant's financial affidavit is awarded to the defendant.
3. The jewelry, collectibles and antiques shown on the plaintiff's financial affidavit, as well as all household furniture and furnishings in her possession, are all awarded to the plaintiff.
4. The plaintiff is to pay the liability shown on her affidavit to Patricia Thomas and hold the defendant harmless therefrom.
5. The 1990 Suzuki shown on the plaintiff's financial affidavit is awarded to the plaintiff.
6. The court awards to the plaintiff 25 percent of the defendant's Amphenol pension plan benefits to which the defendant is entitled as of the date he retires. This award is by QDRO, and the court retains jurisdiction over any disputes involving the CT Page 10898 language thereof. The court also awards to the plaintiff 50 percent of the defendant's pension plan benefits in Kimberly Clark to which the defendant is entitled as of the date he retires. The defendant is ordered to elect a joint and survivorship option under that plan. The award is by QDRO, and the court retains jurisdiction over any disputes that may arise involving the language thereof.
7. The defendant is to pay all of the liabilities shown on his financial affidavit and hold the plaintiff harmless therefrom.
8. The 1990 Dodge and 1976 Fiat shown on the defendant's financial affidavit are both awarded to the defendant.
9. The miscellaneous personal effects in the defendant's possession are all awarded to the defendant except for the following:
 A. The beach tent and TV antenna are awarded to the plaintiff, the defendant is to bring those items to her residence by December 15, 1997.
 B. The window fan and breakfast trays and electric engraver are awarded to the defendant.
 C. All of the remaining items from Schedule A of the plaintiff's claims for relief are awarded to the plaintiff in the event they are located.
10. The Kimberly Clark Credit Union savings account shown on the defendant's financial affidavit is awarded to the defendant.
11. The court orders that the plaintiff apply $6000 from the joint Union savings account that has been awarded to her to reduce the principal balance of the first mortgage on the family home. This is to be completed by December 1, 1997. The court orders that the defendant either obtain a loan on the cash surrender value of his life insurance policies or by whatever other method he wishes pay off the debt in full to Dice, Maloney and Lenz by December 1, 1997.
12. The plaintiff claims that she loaned the defendant $5000 prior to their marriage to purchase a van. That claim is awarded to the defendant and is discharged as a result of the orders CT Page 10899 entered in this decision.
13. All of the cash surrender value in the defendant's two life insurance policies is awarded to the defendant.
D. BY WAY OF ATTORNEY'S FEES
1. No counsel fees are awarded in favor of either party.
F. MISCELLANEOUS ORDERS
1. The plaintiff is restored her maiden name of Teresa Azevedo.
2. The plaintiff is to prepare the judgment file within thirty days and send it to the defendant for signature and filing.
Axelrod, J.